**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: March 13, 2023**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

| IN RE:  GEORGE RYAN CAMPBELL | CASE NO. 22-51153-KMS |
|---|---|
| DEBTOR | CHAPTER 7 |

### OPINION AND ORDER GRANTING MOTION FOR CONTEMPT

This matter came on for hearing on the Motion for Contempt and for Other Relief, ECF No. 68, by Debtor George Ryan Campbell. The Motion alleges contempt and willful violation of the automatic stay of 11 U.S.C. § 362 by creditor Adam Pittman, his attorney, and his attorney's law firm. This proceeding is core under 28 U.S.C. § 157(b)(2)(O).

The stay violation occurred against the backdrop of Pittman's and Campbell's concurrent divorce proceedings and Pittman's allegation that his wife is cheating on him with Campbell. Consistent with that allegation, Pittman filed a lawsuit against Campbell for alienation of affection ("Lawsuit"), seeking compensatory and punitive damages of $8.5 million. There is no question that the Lawsuit was filed and served on Campbell during the pendency of Campbell's bankruptcy case and that Pittman's attorney, Matthew Thompson of Thompson Addison PLLC ("Law Firm"), knew that Campbell had filed bankruptcy.

The Motion is granted, with Pittman, Thompson, and the Law Firm held jointly and severally liable for compensatory damages under 11 U.S.C. § 362(k) in the amount of Campbell's

reasonable and necessary attorney's fees and costs. At the hearing, however, Thompson requested that any violation be attributed only to him and to the Law Firm. Hr'g Tr., ECF No. 98 at 29. Accordingly, only if Thompson and the Law Firm fail to compensate Campbell within the time directed by this Order may Campbell pursue Pittman for payment.

## FINDINGS OF FACT

### I. Relevant to Willfulness of Stay Violation

These facts are undisputed:

1. In August 2022, Campbell's wife filed for divorce in a Mississippi chancery court, alleging adultery. Campbell counterclaimed. Mot., ECF No. 68 at 1.

2. In September 2022 in the same chancery court, Pittman's wife filed for divorce. Pittman counterclaimed. *Id.* at 1-2.

3. Thompson and the Law Firm represent Pittman in his divorce.

4. On October 10, 2022, Campbell filed his bankruptcy case under chapter 13 to stay enforcement of a third-party subpoena that Pittman, Thompson, and the Law Firm caused to be issued against Campbell in Pittman's divorce case. ECF No. 68 at 2; ECF No. 98 at 29.[1]

5. Thompson knew Campbell had filed a chapter 13 case:

---

[1] The subpoena sought documentary proof of Campbell's alleged affair with Pittman's wife. *See* Subpoena, ECF No. 68-3 at 1 (seeking text messages, emails, phone calls, and social media communications between Campbell and Pittman's wife). Ultimately, the subpoena was not enforced, because Thompson decided to instead get the documents through discovery propounded on Pittman's wife. ECF No. 98 at 30. Regardless, the bankruptcy case would not have stayed the subpoena's enforcement. Under facts similar to those here—a creditor who sought to depose the debtor in the creditor's divorce case—another bankruptcy court held that stay relief was not necessary "because the stay does not limit this type of third party testimony." *In re Nofziger*, No. 6:04-bk-09253, 2006 WL 8463198, at *2 (Bankr. M.D. Fla. Apr. 7, 2006). Other courts agree that compelling a debtor to comply with discovery requests or to testify does not implicate the stay when the action is not against the debtor. *See Groner v. Miller (In re Miller)*, 262 B.R. 499, 505 (B.A.P. 9th Cir. 2001); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 977 (N.D. Ill. 1992); *Saber Sec. & Investigations, LLC v. Raines (In re Raines)*, No. 08-41972, 2014 WL 6461784, at *6 (Bankr. S.D. Ga. Nov. 17, 2014); *In re Alem*, No. 13-00119, 2013 WL 4840486, at *3 (Bankr. D.D.C. Sept. 11, 2013); *In re Residential Cap., LLC*, 480 B.R. 529, 537 (Bankr. S.D.N.Y. 2012); *In re Richard B. Vance & Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003).

- On October 10, Thompson was served electronically with a suggestion of bankruptcy filed in Campbell's divorce case by Campbell's divorce attorney, who also represents him here. Grp. Ex. 4, ECF No. 68-4 at 3.

- On October 14, Campbell's attorney entered an appearance in Pittman's divorce and filed a suggestion of bankruptcy there. ECF No. 68 at 2; ECF No. 68-4 at 1-2.

- On October 31, 2022, in a virtual hearing in Pittman's divorce, the chancery judge, Campbell's attorney, and Thompson discussed the fact of Campbell's bankruptcy filing. ECF No. 68 at 3; ECF No. 98 at 29-30.

- Thompson stated at the hearing on the Motion that he knew Campbell had filed a chapter 13 case. ECF No. 98 at 30.

6. In mid-November 2022, Campbell lost his job. *Id.* at 11.

7. On December 19, 2022, Campbell moved to convert to a case under chapter 7. ECF No. 40.

8. On December 21, 2022, the case was converted. Order, ECF No. 44.

9. Also on December 21, Thompson and the Law Firm filed the Lawsuit and had it served on Campbell. ECF No. 98 at 31; Compl, ECF No. 89 at 12 (signature block).

10. Campbell's tortious acts as alleged in the Lawsuit began at least four months before Campbell filed the bankruptcy case. ECF No. 89 at 3-6.

## II. Relevant to Damages

These facts are either of record or established by Campbell's testimony:

1. Campbell's chapter 13 schedules did not list Pittman as a creditor. *See* ECF No. 14 at 13-17.

2. Campbell's conversion schedules, filed the day before the Lawsuit, listed Pittman as holding a contingent, unliquidated "potential claim." ECF No. 42 at 3.

3. Campbell was shocked that the Lawsuit sought $8.5 in damages. ECF No. 98 at 13, 15-16, 20.

4. Approximately two weeks after Campbell filed the Motion for Contempt, Thompson and the Law Firm filed a motion seeking stay modification "so as to permit [Pittman] to continue prosecution of the [Lawsuit]." ECF No. 77.

## CONCLUSIONS OF LAW

### I. Thompson, the Law Firm, and Pittman Willfully Violated the Automatic Stay.

The filing of a bankruptcy case operates as an automatic stay that bars the commencement of any action against the debtor that "could have been commenced before the commencement of the case . . . or to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1). A "willful" violation of the stay gives rise to an action for damages. *See* 11 U.S.C. § 362(k)(1) ("[A]n individual injured by any *willful* violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." (emphasis added)).

"Willful" should not be confused with specific intent. "Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." *Brown v. Chesnut (In re Chesnut),* 422 F.3d 298, 302 (5th Cir. 2005). "The Fifth Circuit has established a three-pronged test to determine a 'willful' violation of the automatic stay: '(1) [the creditor] must have known of the existence of the stay; (2) [the creditor's] acts must have been intentional; and (3) [the creditor's] acts must have violated the stay.'" *In re Reed*, 616 B.R. 77, 81–82 (Bankr. N.D. Miss. 2020) (quoting *Young v. Repine (In re Repine),* 536 F.3d 512, 519 (5th Cir. 2008)).

Here, Campbell has proved all three elements of a willful violation: Thompson, the Law Firm, and Pittman knew of the existence of the stay; the filing of the Lawsuit and its service on Campbell were intentional; and the filing and service violated the stay.

A. Thompson, the Law Firm, and Pittman Knew of the Existence of the Stay.

"[K]nowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay." *Tow v. Henley (In re Henley)*, 480 B.R. 708, 799 (Bankr. S.D. Tex. 2012). Thompson, the Law Firm, and Pittman knew Campbell had filed bankruptcy. Consequently, they knew of the existence of the stay.

Thompson argues, however, that because Campbell did not list Pittman as a creditor in his chapter 13 bankruptcy schedules, Pittman did not receive notice of the case that was "effective" under 11 U.S.C. § 342. Resp., ECF No. 76 at 2. This argument implies that Pittman was a known creditor at the time and should have been listed and therefore noticed at the commencement of the case. But even if so, the argument is without merit because Thompson had actual knowledge of the case, rendering § 342 inapplicable.

Under § 342, "[t]here shall be given such notice as is appropriate . . . of an order for relief in a case under this title." 11 U.S.C. § 342(a). And further, "[a] monetary penalty may not be imposed on a creditor for violation of a stay in effect under section 362(a) (including a monetary penalty imposed under section 362(k)) . . . unless the conduct that is the basis of such violation . . . occurs after such creditor receives notice effective under this section of the order for relief." 11 U.S.C. § 342(g)(2).

But § 342 also recognizes notice "other than in accordance with this section," effective when "such notice is brought to the attention of such creditor." 11 U.S.C. § 342(g)(1). Here, the day Campbell filed bankruptcy, Thompson was electronically served with a suggestion of bankruptcy in Campbell's divorce case. Four days later, Thompson presumably was served with the suggestion of bankruptcy in Pittman's divorce case. Two weeks later, Thompson participated

in a virtual hearing in which the fact of Campbell's bankruptcy was discussed. Finally, Thompson stated at the hearing on the Motion that he knew Campbell had filed a chapter 13 case.

"Once a creditor has knowledge of the bankruptcy, the 'safe harbor' from monetary damages provided by § 342(g) no longer applies." *Murray v. Haugen (In re Murray)*, No. 13-1104, 2013 WL 6800881, at *1 (Bankr. N.D. Cal. Dec. 24, 2013) (citing *Davis v. Kohler (In re Davis)*, 498 B.R. 64, 69 (Bankr. D.S.C. 2013)); *see also In re Sorensen*, No. 11bk33448, 2022 WL 2718871, at *7 (Bankr. N.D. Ill. July 13, 2022) (rejecting interpretation of § 342(g) under which automatic stay "would never apply to a creditor who knew about the filing but did not receive formal written notice of the case," observing that "[s]uch a policy would lead to endless litigation over *how* a creditor found out about the case"); *Walsh v. UGI Utils., Inc. (In re Walsh)*, 518 B.R. 288, 289 (Bankr. M.D. Pa. 2014) ("The first sentence of § 342(g)(1) compels the conclusion that if a 'notice is brought to the attention of a creditor'—i.e., actual knowledge—then it is 'effective.'"). Further, Thompson's knowledge is imputed to Pittman as his client. *See In re Oliver*, No. 07-50836, 2017 WL 1323467, at *6 (Bankr. S.D. Miss. Apr. 10, 2017) (stating that "general rule in agency law . . . that . . . actual knowledge acquired by an agent is imputed to the principal" also applies to attorney-client relationship (quoting *In re Linzer*, 264 B.R. 243, 248 (Bankr. E.D.N.Y. 2001))).

Thompson also argues that because Pittman received no notices in the chapter 13 case, having not been listed as a creditor, "Pittman had no reason to know Debtor's bankruptcy was still pending at the time he filed [the Lawsuit]." ECF No. 76 at 2. But at the hearing, Thompson conceded that had he "been watching the ECF," he would have known the case was still pending. ECF No. 98 at 31.

Indeed, Thompson and the Law Firm—and by imputation, Pittman—should have known the case was still pending. The Lawsuit alleges a prepetition claim. Consequently, Pittman was a creditor when the chapter 13 case was filed regardless of whether his claim was scheduled. And once a creditor receives notice of the bankruptcy filing, "the creditor is obligated to inquire further before ignoring the . . . notice and proceeding to collect on its debt." *In re Henley*, 480 B.R. at 798 (quoting *In re Lile*, 103 B.R. 830, 837 (Bankr. S.D. Tex. 1989)); *see also Caffey v. Russell (In re Caffey)*, 384 B.R. 297, 307 (Bankr. S.D. Ala. 2008) ("Once a creditor has notice of the bankruptcy case, the creditor has the 'responsibility to refrain from violating the stay.'"). Besides checking CM/ECF, Thompson could have called the bankruptcy clerk's office. *See In re Henley*, 480 B.R. at 798 ("At the very least a call to the office of the clerk of this Court is required."). Or he could have asked Campbell's attorney whether the bankruptcy was still pending. He did neither.

### B. Filing and Serving the Lawsuit Were Intentional Acts.

Filing and serving the Lawsuit were intentional acts by Thompson and the Law Firm. And their acts were Pittman's acts under both traditional agency law and Mississippi authority. *See Holland v. Fla.*, 560 U.S. 631, 664 n.4 (2010) ("an attorney's acts are his client's"); *McWilliams v. Advanced Recovery Sys., Inc.*, 174 F. Supp. 3d 936, 943 (S.D. Miss. 2016) (holding creditor's assignee liable for its law firm's violation of Fair Debt Collection Practices Act); *Great Atl. & Pac. Tea Co. v. Majure*, 168 So. 468, 472 (Miss. 1936) (stating that unless represented party shows attorney's lack of authority for litigative act, represented party is bound "by any act which the attorney does in the regular course of practice, however improper the act may be, if done without fraud or collusion"); *Alexander v. Musgrove*, 311 So. 3d 668, 682 (Miss. Ct. App. 2021) (holding that in absence of argument or evidence that attorney was not authorized to sign agreed order, represented party was bound by agreed order).

## C. Filing and Serving the Lawsuit Violated the Stay.

Campbell's tortious acts as alleged in the Lawsuit predate the filing of the chapter 13 case. Consequently, the Lawsuit was an action that "could have been commenced before the commencement of the case," 11 U.S.C. § 362(a)(1), and its filing and service violated the stay.

## II. Campbell Is Entitled to Only Attorney's Fees as Damages.

Campbell asks that Pittman, Thompson, and the Law Firm be found in civil contempt for violating the stay. ECF No. 68 at 5. "[I]n addition to its power under § 362(k) of the Bankruptcy Code, the Court has general contempt power over violations of the automatic stay, including the power to impose coercive sanctions to prevent such violations from continuing." *Wilson v. Arbors of Cent. Park ICG, LLC, (In re Wilson)*, 610 B.R. 255, 279 (Bankr. N.D. Tex. 2019); *see also In re Adams*, 516 B.R. 361, 369 (Bankr. S.D. Miss. 2014) ("Any entity that willfully violates the automatic stay is subject to the bankruptcy court's civil contempt power.").

Here, there is no issue of a continuing violation. Thompson understands—belatedly—the necessity of stay relief before resuming prosecution of the Lawsuit. *See* Mot. for Relief from Automatic Stay, ECF No. 77; *see also* ECF No. 98 at 31 ("The next thing is a petition for contempt . . . that we violated the automatic stay. When I got that, [we] immediately stopped."). Consequently, damages under § 362(k) are sufficient. *See In re Adams*, 516 B.R. at 369-70 ("Because the damages available under § 362(k) include the compensatory damages a debtor can recover in an action for contempt of court, the Court's calculation of damages pursuant to § 362(k) is sufficient for the entirety of the Debtors' damages."). And as Thompson recognizes, Pittman was "doing what we told him to do as far as filing and following legal advice." ECF No. 98 at 29.

"The words 'shall recover' [in § 362(k)] indicate that Congress intended that the award of actual damages, costs, and attorneys' fees be mandatory upon a finding of a willful violation of

the stay." *Garza v. CMM Enters., LLC (In re Garza)*, 605 B.R. 817, 829 (Bankr. S.D. Tex. 2019). Thompson argues that any violation was "technical" because "[t]here's no proof of harm." ECF No. 98 at 33. But "technical" in this context is a term of art. A technical violation occurs when "a creditor violates the automatic stay *without* knowledge of the filing of the bankruptcy." *In re Henley*, 480 B.R. at 798. Pittman, Thompson, and the Law Firm knew Campbell had filed bankruptcy, so this argument fails.

Notwithstanding the mandatory language in § 362(k), the debtor still must prove the damages "with reasonable certainty"; they "may not be speculative or based on conjecture." *Collier v. Hill (In re Collier),* 410 B.R. 464, 476 (Bankr. E.D. Tex. 2009). Here, Campbell seeks attorney's fees and costs in an amount to be determined after submission of billing records, $5000 in compensatory damages for emotional distress, and punitive damages. ECF No. 98 at 28. But punitive damages are not warranted here. And Campbell did not prove distress caused by the filing and service of the Lawsuit. Consequently, Campbell is entitled only to attorney's fees and costs.

A. Campbell Is Awarded Attorney's Fees Incurred to Prosecute the Stay Violation.

Under the plain language of the statute, costs and attorney's fees are actual damages. *See* 11 U.S.C. § 362(k)(1) ("actual damages, *including* costs and attorneys' fees") (emphasis added). "[R]equiring a debtor to incur an injury other than attorney's fees before such fees are recoverable . . . effectively strikes the word 'including' from the statute." *Duby v. United States (In re Duby)*, 451 B.R. 664, 674 (B.A.P. 1st Cir. 2011); *see also Parker v. Credit Cent. S., Inc. (In re Parker)*, 634 F. App'x 770, 774 (11th Cir. 2015) (rejecting creditor's argument that debtor was not entitled to award of attorney's fees because he did not suffer "actual damages").

Yet this is precisely what Thompson argues, that attorney's fees are not recoverable unless the debtor proves other damages. ECF No. 76 at 5-6. In support, Thompson cites—and

misconstrues—*In re Repine*, 536 F.3d at 522. There, the Fifth Circuit Court of Appeals considered whether the attorney's fees properly awarded under § 362(k) are the fees awarded for the prosecution of the § 362(k) action or whether they are instead "fees that are a component of actual damages and thus separate from the fees associated with the section 362(k) action itself." *Id.* Addressing only that question, the Fifth Circuit observed that lower courts in the circuit "have concluded that it is proper to award attorney's fees that were incurred prosecuting a section 362(k) claim." *Id.* Citing a Texas district court case and a Texas bankruptcy court case, the Fifth Circuit continued, "We adopt the same reading of section 362(k) and therefore agree." *Id.*

Entirely missing the substantive holding, that fees incurred in a successful § 362(k) action are recoverable, Thompson focuses on an explanatory parenthetical in one of the case citations to assert that "[t]he Fifth Circuit has adopted the reasoning of the lower courts in this circuit finding that attorney's fees are not recoverable unless the debtor sustained and proves actual damages." ECF No. 76 at 5. Especially given the unambiguous words of the statute, this reading of *In re Repine* is a bridge too far.

Only "reasonable and necessary" fees and costs are recoverable. *In re Wilson,* 610 B.R. at 278. Campbell is therefore awarded only the reasonable and necessary attorney's fees and costs incurred in prosecuting the Motion in an amount to be determined.

### B. Campbell Did Not Prove that the Stay Violation Caused Emotional Distress.

For emotional injury damages under § 362(k), a debtor is, at a minimum, "required to set forth 'specific information' concerning the damages caused by his emotional distress rather than relying only on 'generalized assertions.'" *In re Repine,* 536 F.3d at 521-22. "The plaintiff must . . . present specific evidence of emotional damage . . . a specific discernable injury to the

claimant's emotional state, proven with evidence regarding the nature and extent of the harm." *In re Collier*, 410 B.R. at 477 (quoting *Hitt v. Connell,* 301 F.3d 240, 250-51 (5th Cir. 2002)).

Courts, including this one, have held that evidence of anxiety, stress, depression, panic attacks, exacerbation of a pre-existing condition, and various other physical conditions may support an award of emotional distress damages. *See Gardner v. CLC of Pascagoula, LLC,* No. 1:15CV423, 2019 WL 3364379, at *5 (S.D. Miss. July 25, 2019) (noting in context of Title VII case that "[c]ompensable emotional distress may manifest itself as 'sleeplessness, anxiety, stress, depression, marital strain, humiliation, emotional distress, loss of self esteem, excessive fatigue, or a nervous breakdown' and 'physical manifestations may include ulcers, gastrointestinal disorders, hair loss, or headaches'" (quoting *E.E.O.C v. WC&M Enters., Inc.,* 496 F.3d 393, 402 (5th Cir. 2007))); *Thomas v. Bestway Rental, Inc. (In re Thomas)*, No. 21-00017-KMS, ECF No. 17 at 4-5 (Bankr. S.D. Miss. Aug. 30, 2022) (holding that distress and embarrassment resulting in "couple of days" of missed work were compensable when debtor worked as deputy clerk of court and her co-workers witnessed creditor's filing of replevin action); *Duckworth v. A&J Rentals, Inc. (In re Duckworth),* No. 20-06037-KMS, ECF No. 22 at 3, 7 (Bankr. S.D. Miss. Sept. 10, 2021) (awarding damages for emotional distress when debtor suffered anxiety and depression and where repossession of furniture and sleeping on floor made her more depressed and anxious and caused embarrassment); *Case v. U.S. Bank, N.A. (In re Case)*, No. 19-00017-KMS, ECF No. 33 at 6-7 (Bankr. S.D. Miss. Sept. 30, 2020) (awarding damages for distress manifested by crying, vomiting and diarrhea, insomnia, and depression requiring medication when debtor who had just undergone a chemotherapy treatment was served at home with eviction papers after mortgagee's improper foreclosure); *Johnson v. Magee Rentals, Inc. (In re Johnson)*, 478 B.R. 235, 249 (Bankr. S.D.

Miss. 2012) (holding that debtor sustained emotional injury where creditor's conduct and collection effort caused problems sleeping, anxiety, and inability to concentrate at work).

Here, Campbell testified that after the filing and service of the Lawsuit, his annual wellness check showed that he had gained weight—how much, over what time, and to what effect he did not say—and that his blood pressure "was higher than it's ever been." ECF No. 98 at 14, 19. He also testified that he has experienced heartburn, depression, sleeplessness, and heaviness in his chest to an extent he had not experienced before the filing and service of the Lawsuit. *Id.* at 15-16.

There is no need to reach whether this testimony meets the specific information standard, because even if it does, Campbell must also establish that the stay violations caused his distress. *See, e.g., In re Garza*, 605 B.R. at 830 (holding that dates and brief description of general health problems did not establish causation between stay violation and panic attacks); *Parker v. Smith (In re Parker)*, No. 13-00032-NPO, 2014 WL 1407315, at *3 (Bankr. S.D. Miss. Apr. 10, 2014) ("An award of emotional distress damages under § 362(k) requires, at a minimum, a reasonable relationship between the willful violation and the emotional injury."); *Clayton v. Old Kent Mortg. Co. (In re Clayton)*, No. 09-03024, 2010 WL 4482810, at *4 (Bankr. S.D. Tex. Oct. 29, 2010) (holding that debtor failed to establish that stay violation either caused or exacerbated diabetic condition that was diagnosed two years before stay violation and continued at least four years afterwards). And Campbell failed to make that causal connection.

First, the Lawsuit's filing and subsequent service—the stay violations—could not have come as a surprise. Although Campbell might not have foreseen the Lawsuit's precise parameters, his conversion schedules show he anticipated that Pittman at least might bring a legal action against him. Whereas the chapter 13 schedules did not list Pittman as a creditor, the conversion schedules—filed the day before the Lawsuit—list Pittman as holding a "potential claim." When

asked why he didn't schedule Pittman's claim when he initially filed, Campbell answered, "At the time, I didn't think that I had a reason to. It was the taunting, and subpoenas, and motions that followed . . . ." ECF No. 98 at 20-21. This testimony shows Campbell had realized before he moved for conversion that Pittman posed a legal threat.

Second, and consistent with the lack of surprise, Campbell's testimony focused not on his reaction to the filing and service of the Lawsuit but instead on his shock at the amount of alleged damages:

> Q: And, Mr. Campbell, how did you react to the complaint when you were served with it?
>
> A: I was—I was shocked. I was taken aback. I didn't know—I didn't know of any possible way that I could get through it.
>
> Q. And when you say you didn't know any other possible way to get through it, what do you mean by that?
>
> A. Well, *I knew that I had no means of paying eight and a half million dollars. . . . I mean, just the amount of money that he was seeking is just—I mean, it nearly just threw me over the ledge really.*

ECF No. 98 at 13 (emphasis added).

> Q. And have you had any panic attacks?
>
> A. Heavy chest. I mean, heavy breathing, but I don't—I don't know if I've had a panic attack or not.
>
> Q: Was that—was that something you were experiencing before the service of this complaint?
>
> A: Not to—not to this extent, no. *I mean, eight and a half million dollars is a—is a big number.*

*Id.* at 15-16 (emphasis added).

> Q: [W]hat does shocked mean? Explain that answer please?
>
> A: Well, I was . . . taken aback. I'm looking at a lawsuit for eight and a half million dollars.

Q: *So it was the amount of money that shocked you?*

A: *Yeah, for sure.*

*Id.* at 20 (emphasis added).

"[L]imited and ambivalent evidence of correlation does not equate to evidence of causation." *McClure v. Bank of Am. (In re McClure)*, 420 B.R. 655, 663 (Bankr. N.D. Tex. 2009), *modified on recons.*, 430 B.R. 358 (Bankr. N.D. Tex. 2010). At best, Campbell presented only limited and ambivalent evidence of correlation between the filing and service of the Lawsuit and his weight gain, increased blood pressure, heartburn, depression, insomnia, and chest discomfort. Consequently, he is not entitled to damages for emotional distress.

### C. The Circumstances Do Not Warrant Punitive Damages.

"[Punitive] damages [under § 362(k)] are generally designed to cause a change in the creditor's behavior and serve as a deterrent . . . ." *In re Collier*, 410 B.R. at 478 (citation omitted). "The court may award punitive damages for willful violation of an automatic stay 'in appropriate circumstances,' 11 U.S.C. § 362(k)(1), which we have held requires 'egregious conduct.'" *Monge v. Rojas (In re Monge),* 826 F.3d 250, 256 (5th Cir. 2016) (quoting *In re Repine*, 536 F.3d at 521). "Whether conduct is egregious . . . requires the Court to look at the factual circumstances surrounding the violations." *Ali v. Merchant (In re Ali)*, No. 13-05083, 2015 WL 4611343, at *66 (Bankr. W.D. Tex. July 23, 2015). "Egregious conduct is found when a creditor's actions are reckless and in arrogant defiance of the bankruptcy stay." *In re Garza*, 605 B.R. at 830-31.

This Court has found egregious conduct warranting punitive damages where the creditor was "a sophisticated national lender" that had improperly foreclosed and then attempted to evict the debtors when they were paying the mortgage through the confirmed chapter 13 plan and when the lender's Notice of Termination of Automatic Stay had been nullified two years earlier, *In re*

*Case*, No. 19-00017-KMS, ECF No. 33 at 3, 17; and where a creditor that had previously been sanctioned for "virtually identical misconduct" in another case wrongfully repossessed the debtor's vehicle and did not return it until after the hearing more than two months later, *In re Robinson*, No. 19-01482-KMS, ECF No. 74 at 11 (Bankr. S.D. Miss. September 29, 2020).

Here, unlike in those cases, the violators were not shown to be "bad actor[s] in bankruptcy," *House v. Craft Auto Sales, LLC (In re House)*, No. 16-06026-KMS, 2017 WL 2579026, at *5 (Bankr. S.D. Miss. June 14, 2017). Consequently, punitive damages are not warranted under these facts.

### III. Conclusion

Bankruptcy court is not the place for a nonbankruptcy lawyer to just show up and give it the old college try. And the intersection between bankruptcy law and divorce law is an especially dangerous place to be, as this case demonstrates.

"Ignorance of bankruptcy law does not excuse anyone involved in a willful violation." *In re Halas*, 249 B.R. 182, 191 (Bankr. N.D. Ill. 2000). Here, ignorance resulted in compensatory damages assessed not only against Thompson and his law firm but also against his otherwise blameless client. Thompson would do well to learn from this experience.

### ORDER

The Motion for Contempt is therefore **ORDERED GRANTED**; and

**FURTHER ORDERED** that damages are awarded under § 362(k) in favor of Campbell and against Pittman, Thompson, and the Law Firm, jointly and severally, in the amount of Campbell's reasonable attorney's fees and costs incurred in prosecuting the stay violation, to be determined after review of a fee itemization and affidavit, *see* Miss. Bankr. L.R. 7054-1, filed by

Campbell's attorney within fourteen days of this Order, with responses in opposition due no later than fourteen days after that filing; and

**FURTHER ORDERED** that only if Campbell has not received full compensation from Thompson and the Law Firm within thirty days of the order determining the amount of the award may Campbell then pursue Pittman for payment.

*##END##*